NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COSMOPOLITAN SHIPPING CO., INC., <br><br> Plaintiff, <br> v. <br><br> CONTINENTAL INSURANCE COMPANY, <br><br> Defendant. | **OPINION** <br> Civ. No. 17-4933 (WHW-CLW) |

**Walls, Senior District Judge**

Defendant Continental Insurance Company ("Continental") moves to dismiss this matter for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, to transfer it to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a). Plaintiff Cosmopolitan Shipping Co., Inc. ("Cosmopolitan") opposes the motion. Decided without oral argument under Federal Rule of Civil Procedure 78, the motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

This is an insurance-coverage dispute involving forty-seven third-party liability actions Cosmopolitan faces in the United States District Court for the Northern District of Ohio.[1] Those lawsuits arise from Cosmopolitan's operation of cargo, bulk, and passenger vessels during and after World War II. Numerous seamen now allege bodily injury due to asbestos exposure on Cosmopolitan's shipping vessels during that period.

Continental issued Protection and Indemnity insurance coverage to Cosmopolitan between 1938 and 1951, which includes the years relevant to the asbestos-exposure claims

---

[1] Unless otherwise noted, all facts are drawn from the complaint, ECF No. 1.

1

Cosmopolitan now faces. Because Cosmopolitan has incurred and expects to incur costs defending the asbestos-exposure claims, it requested that Continental assume its defense costs and liabilities under the terms of the policy. Continental denied coverage, and Cosmopolitan initiated this action on July 5, 2017, seeking a declaratory judgment that Continental must defend and indemnify it regarding the asbestos-exposure claims, alleging breach of contract, and claiming bad faith.

Cosmopolitan is a Delaware corporation with its principal place of business in New Jersey. Continental (including predecessor companies Continental Insurance Company of the City of New York and the Marine Office of America Corporation) is a Pennsylvania corporation, and has its principal place of business in Chicago, Illinois. Moriarty Cert. ¶ 8. It is licensed to conduct business in, among other places, New Jersey and New York. *Id.*

## STANDARD OF REVIEW

Rule 12(b)(3) permits a court to dismiss an action that is filed in the wrong venue. A defendant bears the burden of establishing that venue is improper. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012). When deciding a motion to dismiss for improper venue, a court accepts the allegations in the complaint as true, and draws all reasonable inferences and resolves factual conflicts in a plaintiff's favor. *Id.* at 158 n.1.

Under 28 U.S.C. § 1391(b), venue is proper

> in (1) a judicial district in which any defendant resides, if all defendants are residents of State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). According to the Complaint, venue is proper in this district under 28 U.S.C. §1391(b)(2). ECF No. 1 at ¶ 7.

If venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. 1406(a). The court has broad discretion in determining whether to dismiss or transfer a case for improper venue. *See Konica Minolta, Inc. v. ICR Co.*, No. 15-1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015). But "dismissal is considered to be a harsh remedy and transfer of venue to another district court in which the action could originally have been brought [ ] is the preferred remedy." *Id.* (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998)).

Even if venue is proper, an action may nevertheless be transferred to another venue under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient than the current one. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). "[T]he decision to transfer must incorporate all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 498 (D.N.J. 1998) (quotation and citations omitted).

The decision to transfer a case is in the district court's discretion. *Plum Tree, Inc. v.*

*Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). A court balances private and public interests when deciding whether to transfer venue. *Jumara*, 55 F.3d at 879. The private-interest factors include the forum preferences of each party, where the claim arose, convenience to the parties based on "their relative physical and financial condition," and the location of witnesses and evidence to the extent that they would be unavailable in one of the fora. *Id.* Relevant public-interest factors include the enforceability of any resulting judgment; "practical considerations that could make the trial easy, expeditious, or inexpensive"; the relative congestion of cases in each forum; the "local interest in deciding local controversies at home"; the public policies of each forum; and the familiarity of the district court with applicable state law. *Id.* at 879–80. Despite this list of relevant factors, the transfer analysis is meant to be "flexible and individualized" for each case. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988).

## DISCUSSION

### 1. Motion to Dismiss for Improper Venue Under Rule 12(b)(3)

In the Complaint, Cosmopolitan asserts as its basis for venue 28 U.S.C. § 1391(b)(2), *see* Compl. ¶ 7, which provides that an action may be brought in "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Continental argues that "the claim" involved here "is the denial of coverage" under the policy at issue, which is a determination based on that policy's terms. Def.'s Mem. at 6, ECF No. 10. According to Continental, "the negotiations, drafting and issuance" of the policy are the relevant "events" informing a proper venue analysis, all of which occurred in New York. *Id.*

Cosmopolitan opposes, arguing that under 28 U.S.C. § 1391(b)(1), which provides that an action may be brought in "a judicial district in which any defendant resides," venue is proper in this district. 28 U.S.C. § 1391(b)(1). Cosmopolitan notes that Continental, by virtue of its

4

license to do business in New Jersey, is a New Jersey resident for venue purposes under 28 U.S.C. § 1391(c)(2), which provides that an entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). In reply, Continental acknowledges that it is a New Jersey resident under 28 U.S.C. § 1391(c)(2), but reiterates that the basis for venue asserted in the Complaint, 28 U.S.C. § 1391(b)(2), is improper. Def.'s Reply at 6, ECF No. 16.

Venue in this district is clearly proper under 28 U.S.C. § 1391(b)(1) because Continental, the sole defendant in this action, resides in this district for venue purposes under 28 U.S.C. § 1391(c)(2). The Court is permitted to interpret Cosmopolitan's complaint as pleading the correct venue provision, and it will do so here. As leading commenters explain, "the complaint must contain . . . direct allegations on every material point necessary to sustain a recovery on any recognizable legal theory, even though that theory may not be the one suggested or intended by the pleader . . . ." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Civil Procedure § 1216 (3d ed.) (hereinafter Wright & Miller) (collecting cases). "A reference to the wrong statute or an erroneous basis of jurisdiction will be corrected by the court if it can determine the appropriate statute or jurisdictional source from the complaint." *Boarhead Corp. v. Erickson*, 923 F. 2d 1011, 1018 (3d Cir. 1991) (citing Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1210). This ruling accords with Fed. R. Civ. P. 8(e): "[p]leadings must be construed so as to do justice."

### 2. Motion to Transfer Under 28 U.S.C. 1404(a)

    a. *Venue for this action would be proper in the Southern District of New York.*

In considering Continental's motion to transfer venue, the Court must initially determine whether Continental's proposed venue, the Southern District of New York, is one in which "this

action might have been brought." 28 U.S.C. § 1404(a). As discussed, 28 U.S.C. § 1391(b)(1) provides that venue in a civil action is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," and a corporate entity's residence for venue purposes includes "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," 28 U.S.C. § 1391(c). Cosmopolitan does not dispute that because Continental is licensed to do business in New York, Moriarty Cert. at ¶ 8, it is subject to personal jurisdiction in the Southern District of New York, making venue proper in that district under 28 U.S.C. § 1391(b)(1). In addition, venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York.

    b. *Private Interests*

Taken together, the private interests of the parties weigh in favor of transfer.

        i. The parties' forum preferences.

In this circuit, a plaintiff's choice of forum is a paramount consideration in a transfer analysis, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), which "should not be lightly disturbed." *Jumara*, 55 F.3d at 879. Judges in the District of New Jersey have, however, accorded less weight to a plaintiff's decision to litigate here "'where the central facts of their case occurred outside the chosen forum' or the plaintiff's choice of forum 'has little connection with the operative facts of the lawsuit.'" *Melone v. Boeing Co.*, No. 07-1192, 2008 WL 877974, at *2 (D.N.J. Mar. 28, 2008) (quoting *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 323–24 (D.N.J. 1998)); *see Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co., Inc.*, No. 08-914, 2008 WL 5169119, at *4 (D.N.J. Nov. 21, 2008) ("Very few of the facts alleged in the Complaint have any ties to New Jersey and such an attenuated connection to the chosen forum substantially undercuts the weight of Plaintiff's choice.").

Continental argues that the "operative facts" in this case are connected to the Southern District of New York, not New Jersey, because "[b]oth CIC and Cosmopolitan had offices in New York when the policy was issued; the policy was issued and delivered in New York; the policy's brokering was done in New York; and likely all communications relating to the policy's issuance were conducted in New York." Def.'s Mem. at 14; *see* Moriarty Cert. Ex. D (June 1945 claims-handling correspondence from Cosmopolitan contains its Manhattan address). Continental also cites a number of cases involving Cosmopolitan between 1926 and 1982, all of which indicate that Cosmopolitan has sued and been sued in New York state and federal courts over that time period, *id.* at 15–16, and certifies that searches revealed no cases involving Cosmopolitan filed in New Jersey state or federal court. Moriarty Cert. ¶ 10. Cosmopolitan counters that it "has not maintained any offices or any connection with New York for at least" the last ten years. Pl.'s Opp. at 25, ECF No. 14.

Given the limited connection between this lawsuit and New Jersey, and because the central facts of this case arose in the Southern District of New York, where Cosmopolitan was located until approximately ten years ago, the Court sees fit to deviate from the customary deference given to a plaintiff's forum choice, and finds that this factor is neutral. This conclusion is not affected that, in the Complaint, Cosmopolitan alleges that "Continental is an insurance company . . . which has agreed in the insurance policies which it sold to Plaintiff . . . to submit at Plaintiff's request to the jurisdiction of any court of competent jurisdiction in the United States, and to comply with all requirements necessary to give such court jurisdiction." Compl. ¶ 4. The policy at issue appears to contain no such provision, and Cosmopolitan's allegation is thus accorded no weight. *See* Moriarty Cert. Ex. C; *United States ex rel. Tesar Indus. Contractors. V. Turner Const. Co.*, No. 09-1477, 2009 WL 3626696, at *6 (N.D. Ohio

Oct. 29, 2009) ("Because the parties dispute the validity of the venue selection clause, the Court will give it little weight in its balancing under § 1404.").

### ii. Where the claim arose.

To repeat, Continental contends that the claim arose in the Southern District of New York because "the claim" involved here "is the denial of coverage" under the policy at issue, which is a determination based on that policy's terms. Def.'s Mem. at 6. The policy's terms were determined by "the negotiations, drafting and issuance" of the policy, all of which occurred in New York. *Id.*

This factor weighs strongly in favor of transfer. Continental correctly points out that the only connection between Cosmopolitan's coverage claim and the forum state is that Continental sent its coverage denial to Cosmopolitan's counsel in New Jersey. *Id.* at 16. Where Cosmopolitan's counsel is located is irrelevant to determine where the claim arose. *C.f. Barbosa v. McGorman*, No. 12-6772, 2013 WL 5614015, *2 (D.N.J. March 13, 2013) (noting "the convenience of counsel is not a consideration as to the issue of proper venue") (citing *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973)). Instead, courts in this circuit have determined that what matters is where the terms of the policy at issue were negotiated and executed. *See, e.g., Resource Bank v. Progressive Cas. Ins. Co.*, No. 06-1699, 2007 WL 136320, at *4 (E.D. Pa. Jan. 11, 2007) ("A number of courts have expressed the view that the pivotal issue in [a] declaratory judgment action is the interpretation of an insurance policy between the [parties] and therefore the place of negotiation and execution of the policy is the locus of operative facts for purposes of venue transfer.") (citations omitted); *Toll Bros., Inc. v. Nationwide Property and Cas. Ins. Co.*, No. 05-1191, 2005 WL 2600207, at *4 (E.D. Pa. Oct.

13, 2005) (finding this factor weighed in favor of transfer where insurance policy at issue was negotiated, contracted, and performed in other forum).

> iii. The convenience to the parties based on "their relative physical and financial condition," and the location of witnesses and evidence to the extent that they would be unavailable in one of the fora.

The convenience of the forum for witnesses and those witnesses' amenability to compulsory process are relevant factors for the Court to consider. *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973). The convenience of witnesses, however, is only considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.

Continental contends that "based on the allegations of the DJ Action, and the age of the alleged policies, there will likely be no witnesses available other than corporate designees of the parties." Def.'s Mem. at 17. Given the amount of time that has passed since the policies were negotiated and executed, no other witnesses are likely to be alive. *Id.* As a result, "there would be no significant difference between witnesses testifying in New Jersey or in New York" because Continental's corporate designee would have to travel from Chicago to attend any trial. *Id.* While Cosmopolitan's corporate designee is located in New Jersey, "traveling for trial will not be a significant inconvenience and it is likely that depositions will take place where the witnesses reside." *Id.* Continental further argues that any of its relevant records are either digitized or more likely to be located in New York than New Jersey. *Id.*

Cosmopolitan responds that travel to the Southern District of New York would be "an extreme hardship" for its ninety-year-old sole shareholder who resides in Morristown, New Jersey. Pl.'s Opp. at 26; Conway Cert. ¶¶ 8–9. Cosmopolitan agrees that it is unlikely that any

9

witnesses to the policy's negotiation or drafting are still living, but argues that any relevant records it has maintained would be located in New Jersey. Pl.'s Opp. at 26–27.

Neither party has demonstrated (i) that any potential witness is outside the subpoena power of either this Court or those of the Southern District of New York, *see* Fed. R. Civ. P. 45; or (ii) that any documentary evidence would be unavailable in either forum. While Cosmopolitan's shareholder states that it would be "an extreme hardship" if venue were transferred, Continental has indicated that, if the sole shareholder is named a witness, it is willing to depose her where she resides. Def.'s Mem. at 17. The Court finds that this factor favors Cosmopolitan, but its weight is slight.

    c. *Public Interests*

Taken together, the public interests weigh in favor of transfer.

        i. Enforceability of a judgment.

This factor is neutral. There is no indication that a judgment issued in the Southern District of New York would be any more or less enforceable than one from this district.

        i. Practical considerations that could make the trial easy, expeditious, or inexpensive.

The Court finds that there would be little practical difference between having a trial in this district or in the Southern District of New York. Cosmopolitan's shareholder is the only potential witness discussed by either party who is local to either forum. The Southern District of New York is accessible from her home in Morristown. While this factor may weigh against transfer, its weight is slight.

        ii. Relative administrative difficulty in the two fora resulting from court congestion.

Continental points out that, according to the most recent statistics, court congestion in this district is greater than in the Southern District of New York. *See* Federal Court Management

10

Statistics – Comparison Within Circuit (December 31, 2017), available at http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2017. Those statistics, however, are not reflective of this particular Court's caseload, which is reduced due to senior status. This factor thus weighs against transfer.

      iii. Local interest in deciding a local controversy; public policies of the fora; familiarity of the district court with applicable state law.

These three factors weigh in favor of transfer. In a diversity case, a federal court applies the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). Where the transfer of venue is pursuant to section 1404, the transferee court must apply the choice-of-law rules that would have been followed in the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). New Jersey applies a two-step choice-of-law test: first checking for an "actual conflict" and, second, determining which state has the "most significant relationship" to the litigation. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–44 (2008). The available evidence indicates that the negotiating, drafting, and execution of the policy occurred in New York. Consequently, without deciding the issue, the Court notes that New York law, to the extent it conflicts with New Jersey law, is likely to apply to this dispute. The Southern District of New York thus has a significant local interest in faithfully applying the law of the state in which it sits, in a controversy whose "center of gravity" is located in New York. *See LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 590 (D.N.J. 2001).

By contrast, New Jersey's local interest in this dispute is limited to the circumstance that Cosmopolitan moved its offices to New Jersey approximately ten years ago, decades after the policy was issued and the plaintiffs in the underlying asbestos-exposure lawsuits worked on Cosmopolitan's vessels.

## CONCLUSION

Defendant's motion to dismiss is denied, and its motion to transfer this action to the United States District Court for the Southern District of New York is granted. An appropriate order follows.

DATE: 3 April 2018

William H. Walls
Senior United States District Court Judge